UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHRISTY PETHERS,

                  Plaintiff,                                    Hon. Paul L. Maloney

v.                                             Case No. 1:07-CV-605

COMMISSIONER OF SOCIAL
SECURITY,

                  Defendant.

_____/


## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security regarding Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The Commissioner denied Plaintiff's application for DIB benefits, but, finding that Plaintiff became disabled after her date last insured for DIB purposes, granted Plaintiff's application for SSI benefits.

        Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, I recommend that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance.  *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted).  It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993).  In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight.  *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.


## **PROCEDURAL POSTURE**

Plaintiff was 49 years of age at the time of the ALJ's decision.  (Tr. 25, 57).  She completed one year of college and worked previously as a hi-lo driver, laborer, and assembler.  (Tr. 76, 81, 96-97).

Plaintiff applied for benefits on February 18, 2004, alleging that she had been disabled since October 1, 2000, due to back and neck pain, right leg pain, emphysema, endometriosis, and nerve damage.  (Tr. 57-59, 75).  Plaintiff's applications were denied, after which time she requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 26-56).  On June 29, 2006, Plaintiff appeared before ALJ William Decker, with testimony being offered by Plaintiff and vocational expert, Dr. Paul Delmar.  (Tr. 314-52).

In a written decision dated January 12, 2007, the ALJ determined that Plaintiff was entitled to SSI benefits, but did not qualify for DIB benefits because she did not become disabled until after the expiration of her insured status.  (Tr. 15-25).  Specifically, the ALJ determined that Plaintiff has been disabled only since April 24, 2006.  (Tr. 16).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 4-6).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

Plaintiff's insured status expired on March 31, 2005. (Tr. 15-16). Accordingly, to be eligible for Disability Insurance Benefits under Title II of the Social Security Act, Plaintiff must establish that she became disabled prior to the expiration of her insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990). Thus, the issue presented by Plaintiff's action is not whether she is presently disabled, but instead whether she was disabled prior to March 31, 2005.

## RELEVANT MEDICAL HISTORY

On October 13, 2000, Plaintiff injured her back lifting a propane tank from the back of a hi-lo. (Tr. 165). She was diagnosed with "acute lower muscular back spasm" and instructed to participate in physical therapy. (Tr. 165, 167). Plaintiff's back pain persisted despite her participation in physical therapy. (Tr. 169). A subsequent MRI examination revealed the presence of a "small to medium-sized herniation to the right at L5-S1 compressing the S1 root." (Tr. 209).

On November 15, 2000, Plaintiff underwent a laminectomy and diskectomy of L5-S1 on the right, performed by Dr. John Stevenson. (Tr. 173). The following month, Plaintiff began participating in physical therapy. (Tr. 185).

On January 16, 2001, Dr. Stevenson reported that Plaintiff was able to return to work, subject to the following limitations: (1) no bending; (2) no excessive twisting; (3) she can lift 10-15 pounds occasionally; (4) no repetitive lifting; and (5) she must be able to change positions frequently or as needed. (Tr. 202). The doctor reported that these "restrictions are indefinite." (Tr. 202).

On February 14, 2001, Plaintiff participated in an MRI examination, the results of which revealed "postoperative changes on the right at L5-S1," but "no evidence for recurrent disc

4

herniation." (Tr. 189). An MRI examination performed on March 7, 2001, revealed "evidence for spinal canal stenosis at the C6-7 level and to a lessor extent C5-6 level." (Tr. 188). There was, however, no evidence of "abnormal signal in the cord." (Tr. 188).

On February 20, 2001, Dr. Stevenson reported that Plaintiff was able to return to work, subject to the same limitations articulated in his January 16, 2001 report. (Tr. 201).

On March 15, 2001, Plaintiff was examined by Dr. Lisa Pullum. (Tr. 195-97). Plaintiff reported experiencing pain in her lower back which radiated into her right lower extremity. (Tr. 195). An examination of Plaintiff's spine revealed spasm and tenderness in the right lumbar region. (Tr. 196). Straight leg raising and Patrick's sign[1] were both positive on the right. (Tr. 196). The doctor also reported that motor and sensory exams were "decreased" on the right. (Tr. 196). Dr. Pullum diagnosed Plaintiff with lumbar radiculitis and recommended that she undergo a series of epidural steroid injections. (Tr. 196-97). Plaintiff received her first injection that day. (Tr. 197).

On April 12, 2001, Plaintiff was examined by Dr. Pullum. (Tr. 193-94). Plaintiff reported that she received no benefit from her recent epidural injection. (Tr. 193). She also reported that her neck pain was worse than her lower back pain. (Tr. 193). Plaintiff received an epidural steroid injection to treat the pain in her cervical spine. (Tr. 193). On April 19, 2001, Plaintiff rated her neck pain as 8-9 (on a scale of 1-10). (Tr. 192). She received another cervical injection. (Tr. 192). On April 26, 2001, Plaintiff rated her neck pain as 7 (on a scale of 1-10). (Tr. 191). She received another steroid injection. (Tr. 191).

---

[1] Patrick's test is used to determine whether a patient suffers from arthritis of the hip joint. This test is also referred to as Fabere's sign. J.E. Schmidt, *Schmidt's Attorneys' Dictionary of Medicine* P-81 (Matthew Bender) (1996).

On September 6, 2001, Plaintiff was examined by Dr. Stevenson. (Tr. 204). Plaintiff reported that she "continues to struggle with pain, especially [in her] neck and left upper extremity." (Tr. 204). An examination of Plaintiff's shoulder revealed no evidence of focal weakness, tenderness, impingement, or peripheral entrapment. (Tr. 204). Plaintiff's deep tendon reflexes were "stable" and her balance and gait were normal. (Tr. 204).

On September 19, 2001, Plaintiff underwent cervical decompression and fusion surgery of C5-C6 and C6-C7. (Tr. 213).

On March 14, 2002, Plaintiff was examined by Dr. Stevenson. (Tr. 200). Plaintiff reported that her neck and arm were "feeling well," but that she was still experiencing lower back pain. (Tr. 200). An examination of Plaintiff's spine revealed "mild" myofascial tenderness, but no evidence of weakness. (Tr. 200). Straight leg raising was negative. (Tr. 200).

On February 20, 2003, Plaintiff was examined by Dr. Darrin Benzing. (Tr. 259-61). An examination of Plaintiff's neck revealed "a normal active range of motion" with no evidence of tenderness to "firm palpation." (Tr. 260). X-rays of Plaintiff's cervical spine revealed that the vertebrae were "relatively well-aligned." (Tr. 262). The results of a neurological examination were unremarkable. (Tr. 260). Plaintiff exhibited "mild" tenderness in her upper extremities with "good range of motion." (Tr. 260). An examination of Plaintiff's back revealed no evidence of tenderness. (Tr. 260). An examination of Plaintiff's hips revealed "mild to moderate" tenderness on the left, but otherwise revealed no abnormality. (Tr. 260).

On May 19, 2004, Plaintiff was examined by Dr. R. Scott Lazzara. (Tr. 228-31). Plaintiff reported that she was experiencing back and neck pain. (Tr. 228). Plaintiff exhibited "mild" difficulty getting on and off the examination table, "moderate" difficulty heel/toe walking,

6

and "moderate" difficulty squatting and hopping.  (Tr. 229).  Dr. Lazzara observed that "these maneuvers tended to exacerbate the pain in [Plaintiff's] back."  (Tr. 229).  Straight leg raising was positive on the right and Plaintiff exhibited diminished range of motion in her cervical and dorsolumbar spine. (Tr. 230).  Dr. Lazzara diagnosed Plaintiff with chronic neck and back pain.  (Tr. 230).

   X-rays of Plaintiff's lumbar spine, taken on May 26, 2005, revealed "slight" dextroscoliosis and "slight" loss of disc height at L4-5 and L5-S1.  (Tr. 266).  The vertebral bodies were "well aligned" and there were "no significant degenerative changes" evident.  (Tr. 266).

   On May 31, 2005, Plaintiff participated in an MRI examination of her lumbar spine, the results of which revealed postsurgical degenerative changes at the lumbosacral junction and "minimal" early degenerative change at L4-5.  (Tr. 268).  There was no evidence of disc hernia or significant mass effect at L5-S1.  (Tr. 268).

   On April 24, 2006, Plaintiff was examined by Dr. William Schmuggerow.  (Tr. 311-12).  Plaintiff reported that she was experiencing "constant" neck and back pain which radiated down her left upper extremity.  (Tr. 311).  Plaintiff rated her pain as 9 on a scale of 1-10.  (Tr. 311).  Plaintiff reported that her pain had "worsened in the last 30 days."  (Tr. 311).  Plaintiff appeared to be experiencing "moderate discomfort."  (Tr. 311).  The doctor observed that Plaintiff "holds her head straight but does not move her neck in conversation."  (Tr. 311).  An examination of Plaintiff's neck revealed tenderness to palpation throughout.  (Tr. 312).  An examination of Plaintiff's back revealed "extremely limited" range of motion.  (Tr. 312).

## ANALYSIS OF THE ALJ'S DECISION

### A.  Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2]  If the Commissioner can make a dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

### B.  The ALJ's Decision

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) degenerative disc disease of the cervical spine, (2) chronic obstructive pulmonary disease, and (3) borderline intellectual functioning.  (Tr. 19).  The ALJ further determined that beginning in "approximately" January 2006, Plaintiff began suffering from the additional severe impairments of: (1) major depressive disorder, and (2) panic disorder without agoraphobia.  (Tr. 19).  The ALJ

---

[2]1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

8

further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Tr. 19).  The ALJ concluded that prior to April 24, 2006, Plaintiff retained the ability to perform a significant number of jobs.  (Tr. 19-25).  The ALJ further concluded, however, that beginning on April 24, 2006, Plaintiff was no longer able to perfor work which existed in significant numbers.  Accordingly, the ALJ concluded that Plaintiff was disabled as of April 24, 2006.

### 1.  The ALJ's Decision is Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure.  While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that through April 23, 2006, Plaintiff retained the capacity to perform work activities subject to the

following restrictions: (1) she can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) she can stand and/or walk for six hours during an 8-hour workday; (3) she can sit for six hours during an 8-hour workday; (4) she cannot climb ladders, ropes, or scaffolds; (5) she can occasionally balance, stoop, kneel, crouch, crawl, or climb stairs/ramps; (6) she can occasionally reach overhead; and (7) she can perform only simple and routine tasks.  (Tr. 20).

The ALJ further determined that as of April 24, 2006, Plaintiff retained the ability to perform work activities subject to the following restrictions: (1) she can lift no more than 10 pounds; (2) she must be able to alternate between sitting and standing every 30-60 minutes; (3) while seated she can frequently lift five pounds; (4) she cannot perform tasks which require bending, frequent rotation, or prolonged flexion of her neck; and (5) she can perform only simple and routine tasks. (Tr. 21-22).  After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that during the entire time relevant in this matter, Plaintiff was unable to perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding.  *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden.  *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964.  Accordingly, ALJs routinely question vocational experts in an attempt

to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Dr. Paul Delmar.

The vocational expert testified that with respect to Plaintiff's RFC through April 23, 2006, there existed approximately 85,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 347-50). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold). With respect to Plaintiff's RFC as of April 24, 2006, the vocational expert testified that there existed no jobs which an individual with Plaintiff's RFC could perform. (Tr. 347-49).

a. The ALJ Properly Assessed the Medical Evidence

On January 16, 2001, Dr. Stevenson reported that Plaintiff was indefinitely restricted to lifting no more than 15 pounds occasionally. (Tr. 202). As noted above, the ALJ found that through April 23, 2006, Plaintiff retained the ability to lift/carry 20 pounds occasionally and 10 pounds frequently. Plaintiff asserts that because Dr. Stevenson was her treating physician, the ALJ was obligated to afford controlling weight to his opinion that she was unable to lift more than 15 pounds.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical

11

condition.  *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).   Accordingly, the medical

opinions and diagnoses of treating physicians are given substantial deference, and if such opinions

and diagnoses are uncontradicted, complete deference is appropriate.  *See King v. Heckler*, 742 F.2d

968, 973 (6th Cir. 1984).

  Such deference is appropriate, however, only where the particular opinion "is based

upon sufficient medical data."  *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at

*2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232,

235 n.1 (6th Cir. 1987)).  The ALJ may reject the opinion of a treating physician where such is

unsupported by the medical record, merely states a conclusion, or is contradicted by substantial

medical evidence.  *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991

WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*,

839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284,

286-87 (6th Cir. 1994).

  Dr. Stevenson opined that Plaintiff could lift no more than 15 pounds only two

months after Plaintiff underwent back surgery.  While such a limitation may have been appropriate

for a limited period of time, as the ALJ observed, the medical evidence does not support the

indefinite imposition of such a limitation.  Neither the treatment notes of any of Plaintiff's care

providers nor the results of objective medical tests support such a limitation.  Instead, the medical

evidence reveals that Plaintiff's back surgery (and subsequent neck surgery) were successful.

Numerous examinations and objective tests conducted following these surgeries revealed minimal

findings which fail to support Dr. Stevenson's opinion.  In sum, there exists substantial evidence to

support the ALJ's decision to accord less than controlling weight to Dr. Stevenson's opinion.

    b.  The ALJ Properly Evaluated Plaintiff's Credibility

With respect to Plaintiff's subjective allegations of pain and limitation, the ALJ concluded that such "are not entirely credible prior to April 24, 2006." (Tr. 21). The ALJ further concluded that "beginning on April 24, 2006, the claimant's allegations regarding her symptoms and limitations are generally credible, because, beginning on that date, her combination of impairments reasonably present a totality of disabling limitations." (Tr. 23). Plaintiff asserts that the ALJ failed to give proper weight to her subjective allegations.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531. This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 2004 WL 1745782 at *6 (6th Cir., July 29, 2004).

13

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 2004 WL 1745782 at *6 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations not to be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987).

In support of his credibility determination, the ALJ noted that following Plaintiff's surgeries, her condition improved significantly. As the ALJ also observed, following her surgeries (but prior to April 24, 2006), Plaintiff "did not receive significant treatment." (Tr. 21). Moreover, as discussed above, the results of such treatment revealed findings which are contrary to Plaintiff's subjective allegations. In sum, while the medical evidence supports Plaintiff's subjective allegations as regards her condition as of April 24, 2006, the medical evidence prior to that date fails to support

14

her claim that she was impaired to an extent beyond that recognized by the ALJ. The Court finds, therefore, that there exists substantial evidence to support the ALJ's credibility determination.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,


Date: August 7, 2008                    /s/ Ellen S. Carmody
                                        ELLEN S. CARMODY
                                        United States Magistrate Judge